J-S54028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.L.D., O/B/O, M.E.D. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| T.A.J. | |
| Appellant | No. 30 WDA 2016 |

Appeal from the Order December 2, 2015
In the Court of Common Pleas of Armstrong County
Civil Division at No(s): No. 2015-1385-Civil

BEFORE:  BENDER, P.J.E., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                              **FILED JULY 26, 2016**

T.A.J.[1] appeals from the order entered December 2, 2015, in the Court of Common Pleas of Armstrong County, granting J.L.D.'s request, on behalf of her minor daughter M.E.D., for a final protection order pursuant to the Protection From Abuse ("PFA") Act, 23 Pa.C.S. § 6101 *et. seq.*  On appeal, T.A.J. argues that the PFA order was not supported by substantial evidence. Based on the following, we affirm.

The trial court aptly detailed the facts underlying this appeal, which we adopt as dispositive.  ***See*** Trial Court Opinion, 2/3/2016, at 1-2; N.T.,

_____

[1] Although the record and the trial court's opinion identify the parties by their full names, because both the defendant and complainant are minors, "we will identify them in both the caption and in this memorandum by their initials to preserve their privacy." ***E.W. v. T.S.***, 916 A.2d 1197, 1199 n.1 (Pa. Super. 2007).

12/2/2015, at 25-27. We summarize the procedural history of the case as follows. On October 2, 2015, J.L.D. filed a PFA petition on behalf of M.E.D. against T.A.J. On the same day, a Temporary PFA was granted by the trial court. On October 16, 2015 the trial court appointed a guardian *ad litem* to represent T.A.J. On December 2, 2015, a hearing was held at which time the trial court entered the final PFA at issue. This timely appeal followed.[2]

T.A.J.'s sole argument on appeal asserts the trial court abused its discretion in determining that T.A.J. "knowingly" abused M.E.D. in accordance with 23 Pa.C.S. § 6102(a)(5). T.A.J.'s Brief at 8-9.

Our standard of review is well settled.

> In reviewing the validity of a PFA order, we must determine whether the evidence, in the light most favorable to petitioner and granting her the benefit of all reasonable inferences, was sufficient to sustain the trial court's determination that abuse was shown by a preponderance of the evidence. Moreover, we must defer to the lower court's determinations of the credibility of witnesses at the hearing.

***R.G. v. T.D.***, 672 A.2d 341, 342 (Pa. Super. 1996) (internal citations omitted). Moreover,

> [a] PFA order may be issued "to bring about a cessation of abuse of the plaintiff…." 23 Pa.C.S. § 6108. "Abuse," as defined by the

---

[2] On January 5, 2016, the trial court ordered T.A.J. to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). T.A.J. complied with the trial court's directive, and filed a concise statement on January 26, 2015.

statute in relevant part, is "the occurance of one or more of the following acts between … intimate partners:

> (5) Knowingly engaging in a course of conduct or repeatedly commiting acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury…."

23 Pa.C.S. § 6102(a)(5).

*Id.*

Our review of the record confirms that the trial court did not abuse its discretion in concluding T.A.J. violated 23 Pa.C.S. § 6102(a)(5). **See** Trial Court Opinion, 2/3/2016 at 1-3 (finding: (1) M.E.D. and T.A.J. entered a tumultuous relationship on April 2, 2015, which led to many fights that frightened M.E.D.; (2) T.A.J. continuously went to and remained outside M.E.D.'s house after their fights, despite objections from both M.E.D. and her brothers; and (3) the abuse culminated on September 29, 2015, when M.E.D. told T.A.J. about a male friend, and T.A.J. responded by (a) threatening to kill M.E.D., her unborn baby, her male friend, and her cat; (b) threatening to make her life "a living hell;" and (c) calling M.E.D. up to 20 times that day with no answer, causing M.E.D. to become frightened and intimidated). Furthermore, to the extent T.A.J. denied the allegations, the trial court specifically found his testimony incredible. N.T., 12/2/2015 at 27. In reviewing a PFA order, "[w]e must defer to the credibility determinations of the trial court." **Custer v. Cochran**, 933 A.2d 1050, 1058 (Pa. Super.

- 3 -

2007) (en banc) (citation omitted). Therefore, we adopt the discussion of the trial court as dispositive of this appeal.

Order affirmed.[3]

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2016

---

[3] In the event of further proceedings, the parties are directed to attach the trial court's February 3, 2016, opinion to this memorandum.

IN THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY, PENNSYLVANIA



J███ L. D███, O/B/O,
M███ E, D███,
       Plaintiff

      vs.           : No. 2015 - 1385 - CIVIL

T███ A. J███,
      Defendant

## Pa.R.A.P. 1925 OPINION

VALASEK, P.J.

This is an appeal from a final protection from abuse ("PFA") order entered by this Court against Defendant on December 2, 2015.

Defendant has filed his statement of issues presented on appeal. The issues are: (1) that the trial court's decision to issue the permanent PFA order was in error in that the same was not supported by the evidence, and (2) that the trial court's decision to issue the permanent PFA order was in error in that defendant's actions did not constitute abuse as defined under 23 Pa.C.S.A. § 6102(a).

The Court made certain findings on the record at the end of the PFA hearing in support of its decision to issue a final PFA. The Court wishes to supplement its on-the-record findings with the following facts. Defendant, age 15, and the victim, age 14, were boyfriend and girlfriend. The victim is pregnant with Defendant's child, which is due on March 19, 2016.

Defendant and the victim began going together on April 2, 2015. The couple fought all the time. Defendant would come to the

App 1

victim's house and constantly refuse to leave. Defendant called the victim demeaning names such as "slut" and "whore." Defendant pulled the victim's hair. When Defendant and the victim would fight, Defendant would run through the victim's house and flip over a kitchen chair. This frightened the victim. Once, Defendant slammed the victim's door, breaking it.

Defendant would constantly go by the victim's house after a fight. The victim would ask her brothers to tell Defendant to leave. However, Defendant refused to leave. He would just sit outside the victim's house and sometimes yell. The victim told Defendant she wanted some time alone and that she needed to think, but he continued driving past her house anyway.

On September 29, 2015, the victim had a conversation with a male friend named █████. The victim told Defendant about █████. Defendant became enraged. He threatened to kill the victim and her baby if the victim broke up with Defendant. Defendant also said he would kill █████ or anyone else that the victim was with. Defendant told the victim he would make her life "a living hell." In addition, Defendant told the victim that he would kill her cat.

Even though the victim did not want to speak to Defendant, he continued to call the victim. Defendant filled up the victim's voice mail with messages. The victim blocked Defendant's calls, but he used other people's phones to try to avoid being blocked. Defendant called the victim about 20 times that day. He just kept calling. The victim is afraid of him.

The above record demonstrates that for a number of months,

Defendant intimidated and dominated the victim through anger, name-calling, refusing to leave her house and acts of violence. This culminated in a phone call on September 29, 2015, during which Defendant threatened to kill the victim, her baby and the victim's friend, ▓▓▓▓▓.

The record provides more than adequate support that Defendant violated 23 Pa.C.S.A. § 6102(a)(5) by "[k]knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury." Defendant is a very angry young man who is prone to acts of violence. His course of conduct placed the victim in reasonable fear of bodily injury. The Court's issuance of a final PFA order against Defendant was clearly supported by the evidence and Defendant's actions undeniably fell within the definition of abuse.

For all of these reasons, this Court recommends affirmance.

Respectfully submitted,

Dated: February 3, 2016     By